1   Mia Farber (SBN 131467)
    mia.farber@jacksonlewis.com
2   Nima Darouian (SBN 271367)
    nima.darouian@jacksonlewis.com
3   **JACKSON LEWIS P.C.**
    725 South Figueroa Street, Suite 2500
4   Los Angeles, California 90017-5408
    Telephone:   (213) 689-0404
5   Facsimile:   (213) 689-0430

6   Attorneys for Defendant
    EQUINOX HOLDINGS, INC.
7

8               **UNITED STATES DISTRICT COURT**

9               **NORTHERN DISTRICT OF CALIFORNIA**

10

11  FRANK J. FODERA, JR. and                Case No.:
    MICHAEL M. BONELLA, individually
12  and on behalf of all others similarly
    situated,                                **NOTICE OF REMOVAL OF**
13                                           **ACTION TO THE UNITED STATES**
                                             **DISTRICT COURT FOR THE**
14              Plaintiffs,                  **NORTHERN DISTRICT OF**
                                             **CALIFORNIA PURSUANT TO 28**
15      v.                                   **U.S.C. §§ 1332, 1367, 1441, 1446, AND**
                                             **1453**
16
    EQUINOX HOLDINGS, INC., a
17  Delaware corporation; and DOES 1-50,
    inclusive,
18
19              Defendants.

20

21

22          **TO THE HONORABLE CLERK OF THE UNITED STATES DISTRICT**

23  **COURT FOR THE NORTHERN CENTRAL DISTRICT OF CALIFORNIA:**

24          **PLEASE TAKE NOTICE** that Defendant EQUINOX HOLDINGS, INC.

25  ("Equinox" or "Defendant") hereby invokes this Court's jurisdiction under the

26  provisions of 28 U.S.C. §§ 1332, 1367, 1441(a)-(b), 1446, and 1453, and removes the

27  above-entitled action to this Court from the Superior Court of the State of California in

28  and for the County of Alameda.

1.    The original Complaint was filed by Plaintiff Frank J. Fodera, Jr. ("Fodera") in the Superior Court of the State of California in and for the County of Alameda on April 3, 2019.

2.    On April 8, 2019, the Superior Court issued a notice for the Parties to appear at a Complex Litigation Determination Hearing and Initial Complex Case Management Conference on May 8, 2019 and June 5, 2019, respectively.  By Order dated May 10, 2019, the Court designated the case as complex pursuant to Rule 3.400, *et seq.* of the California Rules of Court.  (True and correct copies of the Notice and Orders are attached as **Exhibit "A".**)

3.    On June 3, 2019, counsel for Plaintiff Fodera filed an *ex parte* application for an extension of time to serve the Complaint.  (A true and correct copy of the application is attached as **Exhibit "B".**)

4.    On July 16, 2019, Plaintiffs Fodera and MICHAEL BONELLA ("Bonella") (collectively, "Plaintiffs") filed a First Amended Class Action Complaint against Equinox, and DOES 1-50, inclusive, in the Superior Court of the State of California in and for the County of Alameda ("Superior Court") entitled *Frank J. Fodera, Jr. et al. v. Equinox Holdings, Inc., et al.*, bearing  Case No. RG19013798, which sets forth the following ten (10) causes of action: (1) Failure to Pay All Wages Earned; (2) Failure to Pay Minimum Wage; (3) Failure to Pay Overtime Wages; (4) Failure to Provide Meal Periods; (5) Failure to Provide Rest Periods; (6) Failure to Pay for Rest and Recovery Periods; (7) Failure to Furnish Accurate Wage Statements; (8) Failure to Maintain Required Records; (9) Failure to Pay Earned Wages Upon Termination; and (10) Unfair Competition in Violation of Business and Professions Code Section 17200, et seq.  (A true and correct copy of the Summons, First Amended Complaint and other related court documents are attached as **Exhibit "C".**)

5.    On July 18, 2019, Defendant was served with Plaintiffs' Summons, First Amended Complaint, and related courts documents.  (A true and correct copy of the

Proof of Service Plaintiffs filed regarding the service of these documents is attached as **Exhibit "D".**)

## TIMELINESS OF REMOVAL

6.      This Notice of Removal has been filed within thirty (30) days after Defendant first received a copy of Plaintiffs' Summons and First Amended Complaint upon which this action is based. This Notice of Removal is therefore filed within the time period provided by 28 U.S.C. § 1446(b).

7.      In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting documents will be promptly served on Plaintiffs' counsel and filed with the Clerk of the Alameda County Superior Court. Therefore, all procedural requirements under 28 U.S.C. § 1446 will be satisfied.

## JURISDICTION PURSUANT TO THE CLASS ACTION FAIRNESS ACT

8.      Pursuant to Section 4 of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2) has been amended to read, in relevant part:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which – (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

9.      In addition, CAFA provides for jurisdiction in the district courts where the proposed class involves 100 or more members, or where the primary defendants are not States, State officials, or other governmental entities. 28 U.S.C. § 1332(5).

10.      As set forth below, this is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332(d). It is a civil action filed as a putative class action in which Plaintiffs are citizens of a state different from Defendant, the Complaint's allegations (and Plaintiff's own itemization of penalties) place more than $5,000,000 in controversy exclusive of interest and costs, and the putative class numbers more than

1   100 members.  *See* 28 U.S.C. §§ 1332(d) and 1453. Furthermore, Defendant is not a

2   State, State official, or other governmental entity.

3   **CAFA's Diversity Requirement Is Satisfied**

4        11.    CAFA's diversity requirement is satisfied, in relevant part, when at least

5   one member of a class of plaintiffs is a citizen of a state different from any named

6   defendant. 28 U.S.C. § 1332(d)(2); *see also Snyder v. Harris*, 394 U.S. 332, 340, 89 S.

7   Ct. 1053, 1059 (1969) ("if one member of a class is of diverse citizenship from the

8   class' opponent, and no nondiverse members are named parties, the suit may be brought

9   in federal court even though all other members of the class are citizens of the same

10   State as the defendant and have nothing to fear from trying the lawsuit in the courts of

11   their own State."); *Reece v. Bank of N.Y. Mellon*, 760 F.3d 771, 777 (8th Cir. 2014)

12   ("the citizenship of 'the entire plaintiff class' has no bearing on the jurisdictional

13   inquiry. Diversity jurisdiction in a class action depends solely on the citizenship of the

14   named parties."); *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 162 (2d Cir.

15   1987) ("It is hornbook law, based on 66 years of Supreme Court precedent, that

16   complete diversity is required only between the named plaintiffs and the named

17   defendants in a federal class action.").

18        12.    Citizenship of the parties in this Action is determined by their citizenship

19   status at the Action's commencement.  *See Mann v. City of Tucson*, 782 F.2d 790 (9th

20   Cir. 1986).

21        13.    For diversity jurisdiction purposes, citizenship is determined by a person's

22   domicile. *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986); *see also Crowley v. Glaze*,

23   710 F.2d 676, 678 (10th Cir. 1983).  "A person's domicile is her permanent home,

24   where she resides with the intention to remain or to which she intends to return." *Kanter*

25   *v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).   While residence and

26   citizenship are not the same, a person's place of residence is *prima facie* evidence of

27   their citizenship. *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th

28   Cir. 1994) (allegation of residency "created a presumption of continuing residence in

1   [state] and put the burden of coming forward with contrary evidence on the party

2   seeking to prove otherwise"); *see also Smith v. Simmons*, 2008 U.S. Dist. LEXIS

3   21162, at *22 (E.D. Cal. 2008) (place of residence provides "prima facie" case of

4   domicile). Furthermore, a person's intention to remain may be established by their

5   place of employment. *Youn Kyung Park v. Holder*, 572 F.3d 619, 625 (9th Cir. 2009);

6   *see also Francisco v. Emeritus Corp.,* 2017 U.S.Dist.LEXIS 90131, at *10 (C.D.Cal.

7   June 12, 2017). ("Plaintiff's residence and employment in California are sufficient

8   evidence of his intent to remain in California.").

9       14.   Plaintiff Fodera alleges that he is "a resident of Los Angeles County,

10   California." *See* First Amended Complaint ¶ 8.  Furthermore, Plaintiff Fodera alleges

11   he is "employed by Defendants in Los Angeles, California." *Id*.  Plaintiff Bonella

12   alleges he is "a resident of San Francisco County, California." *See* First Amended

13   Complaint ¶ 7.  Plaintiff Bonella alleges he was "employed by Defendants in San

14   Francisco County and San Diego County." *Id*.  In addition, Defendant is informed and

15   believes Plaintiffs are residents and citizens of the State of California. *See* Declaration

16   of Emerson Figueroa in Support of Defendant's Notice of Removal ("Figueroa Decl."),

17   ¶¶ 5-6.  Accordingly, Plaintiffs are citizens of the State of California within the

18   meaning of 28 U.S.C. § 1332(a). *See, e.g., Zavala v. Deutsche Bank Tr. Co. Ams.*, 2013

19   U.S. Dist. LEXIS 96719, at *9 (N.D. Cal. July 10, 2013) ("A party's residence is 'prima

20   facie' evidence of domicile.  In the absence of evidence to the contrary, [plaintiff] is a

21   California citizen for diversity purposes.") (internal citations omitted).

22       15.   A corporation is a citizen of any state in which it is incorporated and of

23   the state in which it has its principal place of business. 28 U.S.C. § 1332(c).

24       16.   Defendant, both at the time this action was commenced and at the time it

25   was removed to federal court, is either a citizen of the State of Delaware or the State of

26   New York within the meaning of Section 1332(c)(1), because it has been at all such

27   times a corporation formed under the laws of the State of Delaware, with its principal

28   place of business and corporate headquarters located in New York, New York, where

1  Defendant conducts a predominance of its corporate and business activities. Moreover,
2  Defendant's high-level corporate officers are located at its headquarters in New York,
3  New York. *Hertz Corp. v. Friend*, 599 U.S. 77, 130 S.Ct. 1181 (2010). *See* Declaration
4  of Neta Levanon in Support of Defendant's Notice of Removal ("Levanon Decl."), ¶
5  2.

6       17.  Defendant's Board of Directors typically meets at its headquarters in New
7  York, New York. *Id.* ¶ 3; *see also Hertz Corp.,* 130 S. Ct. at 1192 (holding that a
8  corporation's "nerve center" should "normally be the place where the corporation
9  maintains its headquarters--provided that the headquarters is the actual center of
10 direction, control, and coordination, *i.e.*, the "nerve center," and not simply an office
11 where the corporation holds its board meetings (for example, attended by directors and
12 officers who have traveled there for the occasion)."). Applying the "nerve center" test,
13 New York is the state where Defendant's primary executive, administrative, financial
14 and management functions are conducted and where the high-level officers direct,
15 control, and coordinate the corporation's activities — *i.e.*, the principle place of
16 business of Defendant. *See generally* Levanon Decl. ¶ 2.

17      18.  Because at least one member of the class of Plaintiffs is a citizen of a state
18 (*i.e.* California) different from Defendant (*i.e.* Delaware or New York), minimal
19 diversity exists here. *Bradford v. Bank of Am. Corp.*, No. CV 15-5201-GHK (JCx),
20 2015 U.S. Dist. LEXIS 120800, at *13 (C.D. Cal. Sep. 10, 2015) ("[defendant] needed
21 only to establish that one plaintiff was a citizen of a different state from any one
22 defendant at the time of removal.").

23      19.  The presence of Doe defendants has no bearing on diversity with respect
24 to removal. *See* 28 U.S.C. § 1441(a) ("For purposes of removal under this Chapter, the
25 citizenship of defendants used under a fictitious name shall be disregarded.").

26 **CAFA'S Amount In Controversy Requirement is Satisfied**

27      20.  CAFA, 28 U.S.C. Section 1332(d), authorizes the removal of class action
28 cases in which, among other factors mentioned above, the amount in controversy for

1   all class members exceeds $5,000,000. In *Dart Cherokee Basin Operating Company,*
2   *LLC v. Owens*, 135 S. Ct. 547, 554 (2014), the United States Supreme Court held that
3   where a plaintiff's complaint is silent as to whether the amount in controversy is less
4   than CAFA's jurisdictional threshold of $5,000,000, "a defendant's notice of removal
5   need include only a plausible allegation that the amount in controversy exceeds the
6   jurisdictional threshold."

7        21.    In determining whether the amount in controversy exceeds $5,000,000,
8   the Court must presume Plaintiffs will prevail on each and every one of their claims.
9   *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp. 993, 1001 (C.D.
10   Cal. 2002), *citing Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (the
11   amount in controversy analysis presumes that "plaintiff prevails on liability") and
12   *Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir. 1993) ("the amount in controversy is
13   not measured by the low end of an open-ended claim, but rather by a reasonable reading
14   of the value of the rights being litigated").  The argument and facts set forth herein may
15   appropriately be considered in determining whether the jurisdictional amount in
16   controversy is satisfied.  *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 843 n.1 (9th Cir. 2002),
17   *citing Willingham v. Morgan*, 395 U.S. 402, 407 n.3 (1969). Notably, "[t]here is no
18   obligation by defendant to support removal with production of extensive business
19   records to prove or disprove liability and/or damages with respect to plaintiff or the
20   putative class members at this premature (pre-certification) stage of the litigation."
21   *Muniz v. Pilot Travel Ctrs. LLC*, 2007 U.S. Dist. LEXIS 31515, at *15 (E.D. Cal. Apr.
22   30, 2007).

23        22.    Under CAFA, the claims of the individual members in a class action are
24   aggregated to determine if the amount in controversy exceeds the sum or value of
25   $5,000,000. *See* 28 U.S.C. § 1332(d)(6). Congress intended federal jurisdiction to be
26   appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000
27   either from the viewpoint of the plaintiff or the viewpoint of the defendant, and
28   regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory

1    relief)." Sen. Jud. Comm. Rep., S. REP. 109-14, at 42. Moreover, any doubts

2    regarding the amount in controversy requirement under CAFA should be resolved in

3    favor of federal jurisdiction. S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain

4    about whether 'all matters in controversy' in a purported class action 'do not in the

5    aggregate exceed the sum or value of $5,000,000, the court should err in favor of

6    exercising jurisdiction over the case . . . . Overall, new section 1332(d) is intended to

7    expand substantially federal court jurisdiction over class actions. Its provisions should

8    be read broadly . . . .").

9         23.    Plaintiffs do not allege a specific amount in damages for the class they

10   purport to represent, but indicate that they seek damages in excess of twenty-five

11   thousand dollars ($25,000). *See* Plaintiffs' Civil Cover Sheet. Thus, the amount in

12   controversy, as plead by Plaintiffs, is at least $25,000 per plaintiff, or at least

13   $107,475,000.00 ($25,000 x 4,299 putative class members). *See* Figueroa Decl. at ¶12;

14   *see also Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 689 (9th Cir. 2006) (finding

15   jurisdictional amount met where complaint sought no specific amount in damages, but

16   pled the amount in controversy to exceed $25,000 and there were 1,160 class

17   members). For this reason alone, CAFA's amount in controversy requirement is

18   satisfied.

19        24.    But even were this insufficient to establish jurisdiction under CAFA (and

20   it is not), Plaintiffs' Complaint still meets CAFA's amount in controversy requirement.

21   If a plaintiff asserts statutory violations, the court must assume that the violation rate

22   is 100% unless the plaintiff specifically alleges otherwise. *See Muniz v. Pilot Travel*

23   *Ctrs. LLC*, 2007 U.S. Dist. LEXIS 31515, at *12-13 (E.D. Cal. Apr. 30, 2007) ("As

24   these allegations reveal, plaintiff includes no fact-specific allegations that would result

25   in a putative class or violation rate that is discernibly smaller than 100%, used by

26   defendant in its calculations. Plaintiff is the 'master of [her] claim[s],' and if she

27   wanted to avoid removal, she could have alleged facts specific to her claims which

28   would narrow the scope of the putative class or the damages sought.") (citing

1   *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)); *see also Arreola v. The Finish*

2   *Line*, No. 14- CV-03339-LHK, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014)

3   ("District courts in the Ninth Circuit have permitted a defendant removing an action

4   under CAFA to make assumptions when calculating the amount in controversy—such

5   as assuming a 100 percent violation rate, or assuming that each member of the class

6   will have experienced some type of violation— when those assumptions are reasonable

7   in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.*,

8   730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010) ("[C]ourts have assumed a 100% violation

9   rate in calculating the amount in controversy when the complaint does not allege a

10   more precise calculation.").

11       25.   Without admitting that Plaintiffs could recover or are entitled to any

12   damages individually, let alone on a class wide basis, Defendant has a good-faith belief

13   that Plaintiffs' sought-after relief places the amount in controversy in this action in

14   excess of $5,000,000, exclusive of interest and costs.

15       26.   The First Amended Complaint herein seeks relief on behalf of "[a]ll

16   current and former non-exempt employees employed by any Defendant in California

17   as group fitness instructors, personal trainers, or in any other similar capacity, at any

18   time during the four-year period preceding the filing of this action through the present."

19   *See* Complaint ¶ 41.

20       27.   Plaintiffs plead in their First Amended Complaint that they, and the

21   alleged putative class, are "entitled to recover" penalties pursuant to Labor Code

22   Section 203, seeking a penalty of up to 30 days' wages for failure to pay all unpaid

23   wages at termination. *See* Complaint ¶¶ 110-111.  From April 3, 2015 through 30 days

24   from the date of preparing this removal (*i.e.* July 17, 2019) approximately 2,495

25   individuals formerly employed as personal trainers, group fitness instructors, or both,

26   in California left their employment with Defendant or were otherwise "terminated."

27   *See* Figueroa Decl., ¶9; *see also* Complaint ¶ 105 (Plaintiffs defining "terminated" to

28

1 | include Plaintiffs and Class Members who quit, were discharged, or terminated from
2 | employment).

3 |     28.    Plaintiffs specifically allege "Plaintiffs and Class Members <u>regularly</u>
4 | worked more than 40 hours in a workweek and <u>more than 8 hours in a workday</u>." *See*
5 | Complaint ¶ 21. Plaintiffs further allege that Defendant "failed to pay Plaintiffs and
6 | other Terminated Class Members all wages earned and unpaid at the time of
7 | Termination timely[.]" *See* Complaint ¶ 107.

8 |     29.    The California minimum wage was $9.00 an hour effective January 1,
9 | 2015, $10.00 an hour on January 1, 2016, $10.50 an hour on January 1, 2017, $11.00
10 | an hour on January 1, 2018 and $12.00 an hour on January 1, 2019. *See* California
11 | Department of Industrial Relations History of California Minimum Wage Chart.

12 |     30.    Accordingly, based on the lowest possible minimum wage rate for the
13 | calculation of penalties (*i.e.* $9.00 per hour) and Plaintiffs' allegations that they – and
14 | the putative Class Members – regularly worked at least 8 hours in a workday, the
15 | penalties for a claim under Labor Code section 203 for the  2,495 employees equals
16 | $5,389,200 (or 2,495 x $9.00/hr. x 8 hours x 30 days). *See e.g. Lucas v. Michael Kors*
17 | *(USA) Inc.,* No. CV 18-1608-MWF (MRWx), 2018 U.S. Dist. LEXIS 78510, at *8
18 | (C.D. Cal. May 9, 2018) ("Defendants may use reasonable assumptions in calculating
19 | the amount in controversy for purposes of removal."). This alone satisfies CAFA's
20 | amount in controversy requirement.

21 |     31.    Further, Plaintiffs claim "<u>at all material times set forth herein</u>," Defendant
22 | failed to provide accurate wage statements as required under Labor Code section
23 | 226(a), and that "Plaintiffs and Class Members are <u>each entitled to recover</u> from
24 | Defendants the <u>greater</u> of their actual monetary damages caused by Defendants' failure
25 | to comply with California Labor Code section 226(a), or an aggregate penalty not
26 | exceeding four thousand dollars ($4,000) per employee[.]" *See* Complaint ¶ 100; *see*
27 | *also, e.g., Romeo v. Home Depot U.S.A., Inc.,* No. 06CV1505 IEG (BLM), 2006 U.S.
28 | Dist. LEXIS 79881, at *8 (S.D. Cal. Oct. 30, 2006) (holding that when plaintiffs seek

1 | the statutory maximum in their complaint, plaintiffs "cannot avoid satisfaction of the
2 | amount in controversy by alleging it would be 'far from reasonable to infer that a court
3 | or jury' would award the statutory maximum.").

4 | 32.     Labor Code section 226(e)(1) provides that "[a]n employee suffering
5 | injury as a result of a knowing and intentional failure by an employer to comply with
6 | [section 226] subdivision (a) is entitled to recover the greater of all actual damages or
7 | fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred
8 | dollars ($100) per employee for each violation in a subsequent pay period, not to
9 | exceed an aggregate penalty of four thousand dollars ($4,000)."Plaintiffs' § 226(a)
10 | claims are subject to a one-year statute of limitations. *See e.g.* Cal. Code Civ. Proc. §
11 | 340(a).    From April 3, 2018 to approximately April 3, 2019, there are/were
12 | approximately 2,414 current and former non-exempt employees employed by
13 | Defendant as personal trainers, group fitness instructors, or both, in California. *See*
14 | Figueroa Decl., ¶ 10.

15 | 33.     As set forth in Plaintiffs' First Complaint, Plaintiffs and the class members
16 | are seeking the "greater" of their actual monetary damages or an aggregate penalty not
17 | exceeding $4,000 per employee (Complaint ¶ 100) and are therefore seeking the
18 | "statutory maximum." *Romeo v. Home Depot U.S.A., Inc.*, No. 06CV1505 IEG (BLM),
19 | 2006 U.S. Dist. LEXIS 79881, at *8 (S.D. Cal. Oct. 30, 2006).   Thus, based on
20 | Plaintiffs' requested relief, an assessment of total penalties based on the statutory
21 | maximum could amount to up to $9,656000 ($4,000 x 2,414 employees).

22 | 34.     But even assuming less than the statutory cap of $4,000 per employee,
23 | Plaintiffs' alleged wage statement penalties (to which Defendant denies Plaintiffs or
24 | any putative Class Members are entitled) would exceed the amount in controversy
25 | requirement.   Members of the putative class who work or worked for Defendant
26 | are/were paid biweekly, or every two weeks. *See* Figueroa Decl., ¶ 11.   The total
27 | number of paystubs that Defendant issued to employees who are members of the
28 | putative class during the time period of April 3, 2018 to April 3, 2019 is approximately

62,764 paystubs (*i.e.* 2,414 employees x 26 weeks). Assuming a violation of Labor Code section 226(a) (which Defendant denies) for each pay period for the time period claimed by Plaintiffs, potential penalties are approximately $6,155,700 (fifty dollars ($50) per putative class member for the first violation and one hundred dollars ($100) for each of the subsequent violations).   *See* Labor Code § 226(e)(1); *see also Moppin v. Los Robles Reg'l Med. Ctr.*, 2015 U.S. Dist. LEXIS 129574, at *10 (C.D. Cal. Sep. 24, 2015) (district court finding that a 100% violation rate was justified because the plaintiff there asserted in her complaint that "at all relevant times herein, defendants intentionally and willfully failed to furnish plaintiff and the class members with accurate wage statements," thereby accusing defendants of "issuing inaccurate wage statements 'at all times' and in regards to both Plaintiff and the class members."); *Lucas v. Michael Kors (USA) Inc.*, No. CV 18-1608-MWF (MRWx), 2018 U.S. Dist. LEXIS 78510, at *25 (C.D. Cal. May 9, 2018) (noting that "it is not unreasonable to assume that, with this many violations alleged by Plaintiff, every one of the wage statements issued during the one-year period could very likely have been noncompliant.").

35.   Accordingly, just from Plaintiffs' contention that they and the class members are "each entitled to recover" the statutory maximum for Defendant's alleged failure to provide accurate wage statements (*i.e.* $9,476,000) the amount in controversy exceeds $5,000,000.   Alternatively, a conservative calculation of Plaintiffs' claims for violations under Labor Code sections 203 and 226–for Equinox's alleged failure to pay all wages due at termination and alleged failure to provide accurate wage statements, respectively—can also reasonably be read to place in controversy an amount exceeding $11,544,850 (*i.e.* $5,389,150 + $6,155,700, respectively).   As such, based on either calculation, the amount in controversy based on the allegations of the Complaint exceed $5,000,000.   *See, e.g., Behrazfar v. UNISYS Corp.*, 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009) (When a "[d]efendant's calculations were relatively conservative, made in good faith, and based on evidence wherever possible," the Court may find that

1 | the "[d]efendant has established by a preponderance of the evidence that the amount in
2 | controversy exceeds $5,000,000.").

3 |       36.    Additionally, Plaintiffs' First Amended Complaint seeks an unspecified
4 | amount of attorneys' fees in connection with their Complaint. *See, e.g.,* Complaint ¶¶
5 | 39, 40.  Such fees may be considered to determine jurisdictional amount, *see Goldberg*
6 | *v. CPC Int'l, Inc.* 678 F.2d 1365, 1367 (9th Cir. 1982), cert. denied, 459 U.S. 945
7 | (1982), including those fees that are recoverable by statute, *Galt G/S v. JSS Scandinavia*
8 | 142 F.3d 1150, 1155-56 (9th Cir. 1998).  Indeed, the Ninth Circuit recently concluded
9 | that "the amount in controversy is not limited to damages incurred prior to removal—
10 | for example, it is not limited to wages a plaintiff-employee would have earned before
11 | removal (as opposed to after removal).  Rather, the amount in controversy is
12 | determined by the complaint operative at the time of removal and encompasses all
13 | relief a court may grant on that complaint if the plaintiff is victorious." *Chavez v.*
14 | *JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018); *see also Lucas v.*
15 | *Michael Kors (USA) Inc.*, 2018 U.S. Dist. LEXIS 78510, at *32 (C.D. Cal. May 9,
16 | 2018) ("unaccrued post-removal attorneys' fees can be factored into the amount in
17 | controversy.").

18 |       37.    "Courts in this circuit have held that, for purposes of calculating the
19 | amount in controversy in a wage-and-hour class action, removing defendants can
20 | reasonably assume that plaintiffs are entitled to attorney fees valued at approximately
21 | twenty-five percent of the projected damages." *Fong v. Regis Corp.*, No. C 13-04497
22 | RS, 2014 U.S. Dist. LEXIS 275, at *23 (N.D. Cal. Jan. 2, 2014); *see also Hamilton v.*
23 | *Wal-Mart Stores, Inc.*, No. ED CV 17-01415-AB (KKx), 2017 U.S. Dist. LEXIS
24 | 162856, at *16 (C.D. Cal. Sep. 29, 2017) ("The Ninth Circuit has allowed an estimate
25 | fee award of 25% of a plaintiff's damages in calculating the amount in controversy
26 | under CAFA."); *Gutierrez v. Stericycle, Inc.*, No. LA CV15-08187 JAK (JEMx), 2017
27 | U.S. Dist. LEXIS 20975, at *51 (C.D. Cal. Feb. 14, 2017) ("it is appropriate to include
28 | in the calculation of the amount in controversy a potential fee award of 25% of the

1   value of certain of the substantive claims."); *Herrera v. Carmax Auto Superstores Cal.,*
2   *LLC*, 2014 U.S. Dist. LEXIS 188729, at *12 (C.D. Cal. June 12, 2014) ("Substantial
3   authority supports a 'benchmark' 25 percent attorneys' fees figure to be added to any
4   claim for which attorneys' fees are available.").

5       38.   Here, the projected damages of Plaintiffs' claims of inaccurate wage
6   statements and waiting time penalties may surpass $11,544,850, which itself exceeds
7   the jurisdictional requirement. Twenty-five percent of this amount is $2,886,212.50.
8   Of course, in addition to these claims, Plaintiffs have also asserted claims for, *inter*
9   *alia*, failure to pay all wages earned; failure to pay minimum wage; failure to pay
10  overtime wages; and unfair competition. *See* Complaint ¶¶ 50-55, 57-63, 65-71, 117-
11  118.

12  **CAFA's Numerosity Requirement Is Satisfied**

13      39.   CAFA also requires that "the number of members of all proposed plaintiff
14  classes in the aggregate" exceeds 100, a standard satisfied by the Complaint here. *See*
15  28 U.S.C. § 1332(d)(5).

16      40.   Here, Plaintiffs allege "it is estimated that the Class will number greater
17  than 100." *See* Complaint ¶ 43. Furthermore, based upon Defendant's records, the
18  putative class includes approximately 4,299 current and former employees who were
19  employed by Defendant as personal trainers, group fitness instructors, or both, in
20  California between April 3, 2015 and approximately August 6, 2019.  *See* Figueroa
21  Decl., ¶ 12.  As such, this Court properly has jurisdiction over this matter, as the class
22  proposed by Plaintiffs contains in excess of 100 members.

23  **TRADITIONAL DIVERSITY JURISDICTION PURSUANT TO 28 U.S.C. §**
24  **1332**

25      41.   Separately and independently, the Court has subject matter jurisdiction
26  over this case on the basis of 28 U.S.C §§ 1332 and 1441, because this is a civil action
27  between citizens of different States, in which the amount in controversy exceeds the
28  sum of $75,000, exclusive of costs and interests.

**Traditional Diversity Is Satisfied**

1

2    42.    As noted above, Plaintiffs are both citizens of California.    *See* First

3 Amended Complaint ¶¶ 7 - 8. As discussed, Equinox is incorporated in Delaware and

4 headquartered in New York and is therefore a citizen of Delaware and New York.  *See*

5 Levanon Decl., ¶ 2.  Moreover, as previously discussed, the presence of Doe defendants

6 has no bearing on diversity with respect to removal. *See supra* ¶ 17.

7    43.    Therefore, this is an action between California citizens, on the one hand,

8 and a citizen of New York and/or Delaware, on the other hand, so as to vest this Court

9 with traditional diversity jurisdiction.

10 **The Amount In Controversy Requirement for Traditional Diversity Jurisdiction**

11 **is Satisfied**

12    44.    This action also meets the amount in controversy requirement for removal

13 based on traditional diversity jurisdiction.  Specifically, 28 U.S.C. § 1332(a) authorizes

14 the removal of cases in which, among other factors addressed above, the amount in

15 controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

16 Where the plaintiff's complaint is silent to the amount of damages claimed, the

17 removing defendant need only establish that it is more probable than not that the

18 plaintiff's claim exceeds the jurisdictional minimum.  *Guglielmino v. McKee Foods,*

19 *Corp.,* 506 F.3d 696, 699 (9th Cir. 2007); *Sanchez v. Monumental Life Ins. Co.,* 95 F.3d

20 856, 860-61 (9th Cir. 1996).  That is, a plaintiff's failure to specify in the complaint the

21 total amount of damages she seeks does not deprive this Court of jurisdiction.  *See,*

22 *e.g., White v. J.C. Penney Life Ins. Co.*, 861 F.Supp. 25, 26 (S.D. W.Va. 1994) (a

23 defendant may remove a suit to federal court notwithstanding the failure of plaintiff to

24 plead a specific dollar amount in controversy; if the rules were otherwise, "any plaintiff

25 could avoid removal simply by declining . . . to place a specific dollar value upon its

26 claim.").

27    45.    In assessing diversity jurisdiction in a multi-plaintiff action, if one

28 plaintiff's claims "satisfy the amount-in-controversy requirement, but the claims of

1   other plaintiffs do not, . . . § 1367(a) confers supplemental jurisdiction over all claims,

2   including those that do not independently satisfy the amount-in-controversy

3   requirement, if the claims are part of the same Article III case or controversy." *See*

4   *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 558-59, 125 S. Ct. 2611, 2620

5   (2005); *see also Geerlof v. C&S Wholesale Grocers, Inc.*, 2014 U.S. Dist. LEXIS

6   51428, at *20 (E.D. Cal. Apr. 11, 2014) ("Should at least one Plaintiff meet the $75,000

7   requirement, the Court may exercise its supplemental jurisdiction over the claims of

8   the remaining Plaintiffs."); *Alcatel Lucent United States, Inc. v. Dugdale Communs.,*

9   *Inc.*, 2010 U.S. Dist. LEXIS 22226, at *14-15 (C.D. Cal. Mar. 5, 2010) ("In an action

10  involving multiple plaintiffs, a federal court may exercise supplemental jurisdiction

11  over a co-plaintiff's claims that fail to meet the jurisdictional amount in controversy if

12  (1) at least one plaintiff satisfies the amount in controversy, (2) the other elements of

13  diversity jurisdiction are satisfied, and (3) the plaintiff's claims are part of the same

14  'case or controversy.'").

15       Here, the jurisdictional amount is satisfied because Plaintiff Fodera's claims

16  exceed the sum or value of $75,000, and because all of Plaintiffs' claims are part of the

17  same Article III case or controversy. *See Alcatel Lucent United States, Inc. v. Dugdale*

18  *Communs., Inc.*, 2010 U.S. Dist. LEXIS 22226, at *16 (C.D. Cal. Mar. 5, 2010) ("In

19  order to determine whether the claims are part of the same case or controversy, the

20  Court will examine whether they involve a 'common nucleus of operative fact.'"); *see*

21  *also* Complaint ¶ 47 ("The claims of Plaintiffs are typical of the claims of all members

22  of the Class they seek to represent because all members of the Class sustained injuries

23  and damages arising out of Defendants' policies, practices, and common course of

24  conduct in violation of law, and the injuries and damages of all members of the Class

25  were caused by Defendants' wrongful conduct in said violation of law, as alleged

26  herein.").

27       46.   Fodera alleges that he "regularly worked more than 40 hours in a

28  workweek and more than 8 hours in a workday," and that Defendant maintained a

1   policy of requiring him to perform various duties off the clock "<u>at all relevant times</u>
2   <u>within the applicable class period.</u>" Complaint ¶¶ 24-31, 67, 69. Fodera does not allege
3   the precise number of overtime hours worked and further does not allege the rate at
4   which he believes payment was due. *Id.; see also Lucas v. Michael Kors (USA) Inc.,*
5   2018 U.S. Dist. LEXIS 78510, at *8 (C.D. Cal. May 9, 2018) ("Defendants may use
6   reasonable assumptions in calculating the amount in controversy for purposes of
7   removal."). Instead, Fodera only notes that he "is, and within the four last years
8   preceding the filing of this action was, employed by Defendants as a group fitness
9   instructor in Los Angeles County, California." Complaint ¶ 8. Based on the lowest
10  possible minimum wage rate for the "applicable class period," and assuming solely for
11  purposes of removal that Fodera worked ten (10) hours of overtime per week during
12  the applicable class period for which he was allegedly not compensated, the amount
13  placed in controversy with respect to Fodera's claim for failure to pay overtime wages
14  is at least $25,950 (*i.e.* $10.00 per hour x 1.5 [$15.00/hour] x 10 hours x 173 weeks).

15     47.   As discussed, Fodera also alleges he "regularly worked" more than 8
16  hours in a workday, and that Defendant "failed to pay Plaintiffs and other Terminated
17  Class Members all wages earned and unpaid at the time of Termination timely[.]"
18  Complaint ¶ 108. Thus, based on the lowest possible minimum wage rate for the
19  calculation of penalties (*i.e.* $10.00 per hour), and Fedora's allegations that he regularly
20  worked at least 8 hours in a workday, the penalties for a claim under Labor Code
21  section 203 for Fodera would equal $2,400.00 ($10.00/hr. x 8 hours x 30 days).

22     48.   As further discussed, in light of Fodera's claim that "<u>at all material times</u>
23  <u>set forth herein</u>" Defendant failed to provide accurate wage statements as required
24  under Labor Code section 226(a), and assuming a violation of Labor Code section
25  226(a) for each pay period for the time period claimed by Fedora, the number of
26  potentially inaccurate wage statements supports an assessment of total potential
27  penalties of at least $2,550 (fifty dollars ($50) for the first violation, and one hundred
28  dollars ($100) for each subsequent violation). *See* Labor Code § 226(e)(1); *see also*

1  *Lucas v. Michael Kors (USA) Inc.*, 2018 U.S. Dist. LEXIS 78510, at *25 (C.D. Cal.

2  May 9, 2018) (noting that "it is not unreasonable to assume that, with this many

3  violations alleged by Plaintiff, every one of the wage statements issued during the one-

4  year period could very likely have been noncompliant.").

5      49.    Accordingly, just from Fodera's claims for (i) failure to pay overtime

6  wages, (ii) failure to pay wages earned at termination, and (iii) failure to furnish

7  accurate wage statements, Defendant estimates the amount in controversy arising from

8  these three claims to be a minimum of $30,900.00  Of course, Fodera also includes

9  claims for, *inter alia*, failure to pay all wages earned, failure to provide meal and rest

10  periods, and unfair competition in violation of Business and Professions Code section

11  17200, which only further add to the amount in controversy. *See* Complaint §§ 50-55,

12  73-85, 114-118.

13     50.    In addition, Fodera alleges that he is entitled to recover his attorneys' fees

14  pursuant to Labor Code § 218.5, Code of Civil Procedure § 1021.5, and "any other

15  applicable sections." Complaint §§ 39, 40.  As discussed, attorneys' fees are properly

16  included in the amount in controversy for purposes of evaluating diversity jurisdiction.

17  *Galt G/S v. JSS Scandinavia* 142 F.3d 1150, 1156 (9th Cir. 1998) ("where an

18  underlying statute authorizes an award of attorneys' fees, either with mandatory or

19  discretionary language, such fees may be included in the amount in controversy.").

20  Moreover, the Court may examine the nature of the action and the relief sought and

21  take judicial notice of attorney's fee awards in similar cases. *See e.g. Rutledge v.*

22  *Healthport Techs., LLC*, 2017 U.S. Dist. LEXIS 26453, at *4 n.3 (N.D. Cal. Feb. 24,

23  2017).

24     51.    District courts in the Ninth Circuit have acknowledged "attorneys

25  handling  wage-and-hour cases typically spend far more than 100 hours on the case."

26  *Lippold v. Godiva Chocolatier, Inc.*, 2010 U.S. Dist. LEXIS 47144, at *11 (N.D. Cal.

27  Apr. 15, 2010); *see also Cagle v. C&S Wholesale Grocers, Inc.*, 2014 U.S. Dist. LEXIS

28  21571, at *30 (E.D. Cal. Feb. 18, 2014).  Here, Plaintiffs are represented by the law

firm Makarem & Associates, and specifically, attorneys Ronald W. Makarem (principal attorney) and Samuel D. Almon (a senior associate attorney). *See* Complaint. Over two years ago, Mr. Makarem represented that his hourly rate was $640.00, and that the hourly rate for a senior associate attorney at his firm was $510.00. *See* Defendant's Request for Judicial Notice in support of Notice of Removal, Exhibit 1. Thus, at a blended rate of $575.00/hour, attorneys' fees would reach $57,500 after just 100 billable hours. *Id.; see also Velazquez v. Costco Wholesale Corp.*, 2013 U.S. Dist. LEXIS 202124, at *7 (C.D. Cal. Mar. 11, 2013) (finding an hourly rate of $600 to be "reasonable" in a wage and hour case); *Anderson v. Nextel Retail Stores, LLC*, 2010 U.S. Dist. LEXIS 71598, at *24 (C.D. Cal. June 30, 2010) (noting that hourly billing rates ranging from $450 to $515 for associates and $600 to $750 for partners are reasonable in a "straightforward wage-and-hour litigation").

52.    Moreover, as discussed, Fodera is also seeking attorneys' fees pursuant to Code of Civil Procedure § 1021.5. Complaint ¶¶ 40, 118; *see also Serrano v. Unruh*, 32 Cal.3d 621, 639 (Cal. 1982) ("We hold therefore that, absent circumstances rendering the award unjust, fees recoverable under section 1021.5 ordinarily include compensation for all hours reasonably spent, including those necessary to establish and defend the fee claim.") *Velasquez v. Khan*, 2005 U.S. Dist. LEXIS 28956, at *11 (E.D. Cal. Sep. 28, 2005) (district court awarding reasonable attorney's fees, pursuant to section 1021.5, in the amount of $192,555.00); *Castro v. Chang Sup Han (In re Chang Sup Han)*, 2015 Bankr. LEXIS 3210, at *32 (Bankr. C.D. Cal. Sep. 22, 2015) (awarding professional fees and costs of $138,866.50 for services rendered and $9,377.42 for costs, for a total of $148,243.92, pursuant to California Labor Code § 1194(a) and California Code of Civil Procedure § 1021.5).

53.    In short, the amount in controversy requirement for traditional diversity jurisdiction is easily satisfied. Even without considering several of Fodera's claims (including his Business & Professions Code § 17200 claim), Fodera's individual claims place in controversy in excess of $75,000: $25,950 [unpaid overtime work] + $2,400.00

[statutory penalties for failure to pay wages at termination] + $2,550.00 [civil wage statement penalties] + $57,500.00 [attorneys' fees] = $88,400.00. Although this is the minimum amount Fodera has placed in controversy, Defendant nevertheless disputes that Fodera – or any Plaintiff – is entitled to recover *anything* by virtue of this action.

54.     Accordingly, pursuant to both § 1332(d)(2) (diversity jurisdiction pursuant to CAFA) and § 1332(a) (traditional diversity jurisdiction), the amount in controversy requirement is satisfied here.

## VENUE IS PROPER

55.     Venue lies in the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1441(a) and 1391(c) because the State action was filed in this district and Defendant is subject to personal jurisdiction in the Northern District of California.

56.     WHEREFORE, Defendant removes the above-entitled action now pending in the Superior Court of the State of California for the County of Alameda to this Court.

Respectfully submitted,

Dated: August 16, 2019          JACKSON LEWIS P.C.


By: /s/ *Mia Farber*
Mia Farber
Nima Darouian

Attorneys for Defendant
EQUINOX HOLDINGS, INC.

4835-6780-1761, v. 1